**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No.:**

JASON HERNANDEZ,

      Plaintiff,

v.

DELTA AIR LINES, INC.,

      Defendant.

_____/

## COMPLAINT

Plaintiff Jason Hernandez, by and through undersigned counsel, sues Defendant Delta Air Lines, Inc. and alleges:

## JURISDICTION AND VENUE

1. This is an action for damages arising under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e et seq. ("Title VII"); the Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 621 et seq. ("ADEA"); and the Florida Civil Rights Act of 1992, Chapter 760, Florida Statutes ("FCRA").

2. This Court has original jurisdiction over Plaintiff's Title VII and ADEA claims under 28 U.S.C. § 1331 and supplemental jurisdiction over Plaintiff's FCRA claim under 28 U.S.C. § 1367.

1

3. Venue is proper in the Southern District of Florida under 28 U.S.C. § 1391(b) and 42 U.S.C. § 2000e-5(f)(3) because all unlawful employment practices described in this Complaint were committed within this district, where Plaintiff was employed at Defendant's Miami-Dade County operations.

4. Plaintiff timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission, dually filed with the Florida Commission on Human Relations, within 300 days of the last discriminatory act. The EEOC issued Plaintiff a Notice of Right to Sue. All conditions precedent to this action have been satisfied.

**PARTIES**

5. Plaintiff Jason Hernandez is a 52-year-old Black man of Dominican and Puerto Rican national origin who resides in Miami-Dade County, Florida. He was employed by Defendant as a Customer Service Agent from February 20, 2012 until his constructive discharge on or about August 2025, following a suspension that began on May 20, 2025.

6. Defendant Delta Air Lines, Inc. is a Delaware corporation headquartered in Atlanta, Georgia, registered and authorized to do business in Florida, and operating at Miami International Airport in Miami-Dade County, Florida. At all relevant times, Defendant employed far more than twenty employees and is an employer within the meaning of 42 U.S.C. § 2000e(b), 29 U.S.C. § 630(b), and section 760.02(7), Florida Statutes.

**FACTUAL ALLEGATIONS**

7. Plaintiff was hired by Defendant on February 20, 2012, as a Customer Service Agent. His

duties included assisting passengers, checking passengers in for flights, processing baggage transactions, and ensuring compliance with Defendant's established check-in procedures. Over

2

the course of his nearly thirteen years of employment, Plaintiff worked approximately fifty hours per week. He had no record of discipline or performance deficiency. 8. Plaintiff is a Black man of Dominican and Puerto Rican national origin. He was 52 years old at the time of the events described below. These characteristics individually and in combination place Plaintiff in protected classes under Title VII, the ADEA, and the FCRA. 9. On May 20, 2025, Plaintiff was walking through a hallway at Defendant's Miami International Airport facility when Tony Chapman, a supervisor employed by Defendant, opened a door and physically pushed Plaintiff into an office without Plaintiff's consent. Plaintiff asked what was happening. He was told to turn off his phone because Defendant wanted to question him. Plaintiff did not enter the room voluntarily.

10. Present in the office were two of Defendant's corporate security representatives and one Human Resources representative. Mitchell Dukes and Cristian Villatoro were also involved in or present in connection with the interrogation. The security and HR representatives told Plaintiff that he was required to cooperate with their questioning or he could be fired.

11. The interrogation concerned Cuba flights. Defendant's representatives accused Plaintiff of participating in a conspiracy involving duplicate credit card transactions on those flights. They questioned Plaintiff about what items Cuban passengers could legally bring in their luggage. Plaintiff told the interrogators that determining what Cuban passengers could or could not transport was not part of his job duties. His responsibility was to follow

Defendant's check-in  procedures, ask passengers whether they were carrying restricted items or substances, and  report to Defendant's other controls if concerns arose. He had no authority or training to assess  cargo or immigration compliance beyond those procedures.

3

12. Defendant's representatives also questioned Plaintiff about a travel agency. When Plaintiff could not provide answers that satisfied them, they repeated the threat of termination. Plaintiff read Defendant's own policies back to them during the interrogation and explained, with specificity, how he had complied with each applicable standard. Defendant's representatives provided no documentation supporting the conspiracy accusation and did not explain the basis for targeting Plaintiff.

13. At the conclusion of the interrogation on May 20, 2025, Defendant suspended Plaintiff without  providing a written explanation. Plaintiff was escorted to his locker and then removed from the  airport premises. Defendant confiscated Plaintiff's airport identification badge. Plaintiff's  access to Defendant's systems, employee benefits, and communications was terminated.

14. On July 18, 2025, approximately two months after the suspension, Defendant notified Plaintiff  that its investigation had concluded. Defendant did not provide Plaintiff with the investigation  findings in writing. Defendant told Plaintiff he would be contacted to learn whether he still had  a job.

15. Approximately two weeks after the July 18 notification, Defendant called Plaintiff and told him that he could either resign or be terminated, but that he would not be returning to work in either  case. Defendant  presented  Plaintiff  with  no  documented  performance  basis  for

termination. Plaintiff's thirteen-year employment record contained no prior discipline. Defendant's forced choice between resignation and termination constitutes a constructive discharge.

16. To Plaintiff's knowledge, every employee terminated by Defendant in connection with the Cuba flight investigation was Latino. The majority of those employees, including Plaintiff,

4

were over 50 years of age. No non-Latino employee and no employee under 40 who handled Cuba flights was suspended or terminated in connection with the same investigation. 17. Defendant's stated justification for the suspension and forced termination, that Plaintiff was implicated in a credit card conspiracy involving Cuba flights, was never supported by any documentation, was never explained to Plaintiff with specificity, and was offered only after a coerced interrogation in which Plaintiff was physically pushed into a room and threatened with immediate firing if he did not cooperate. The investigation lasted two months, resulted in no written findings provided to Plaintiff, and was followed immediately by a termination  ultimatum rather than any reinstatement or clearing of Plaintiff's name.

18. As a direct result of Defendant's conduct, Plaintiff lost nearly thirteen years of accumulated wages, benefits, seniority, and retirement contributions. He suffered and continues to suffer emotional distress, humiliation, damage to his professional reputation in the airline industry, and loss of future earning capacity.

## COUNT I

### RACE DISCRIMINATION IN VIOLATION OF TITLE VII OF THE CIVIL

**RIGHTS ACT OF 1964, 42 U.S.C. § 2000e-2(a)**

19. Plaintiff re-alleges paragraphs 1 through 6 (Jurisdiction, Venue, and Parties) and paragraphs 7 through 18 (Factual Allegations) as if fully set forth herein.

20. Title VII prohibits an employer from discriminating against an employee with respect to the terms, conditions, or privileges of employment because of that employee's race. 21. Plaintiff is Black. His race placed him in a protected class under Title VII.

5

22. Plaintiff was qualified for his position and had performed his duties without disciplinary incident for nearly thirteen years.

23. Defendant took materially adverse employment actions against Plaintiff based on his race. Plaintiff was physically forced into an interrogation room, threatened with immediate termination if he did not cooperate with questioning, suspended without written justification, stripped of his airport credentials and benefits, and ultimately presented with a forced choice between resignation and termination following a two-month investigation that produced no written findings. Every employee terminated in connection with the same Cuba flight investigation was Latino. No non-Latino and no non-Black employee who handled Cuba flights was subjected to the same treatment.

24. The pattern of targeting exclusively Latino and Black employees for termination in connection with the Cuba flight investigation, while non-Latino and non-Black employees handling the same flights were not investigated or terminated, supports a plausible inference that race was a motivating factor in the adverse actions taken against Plaintiff.

25. The stated justification, participation in a credit card conspiracy, was never documented,

never explained with specificity, and was presented through a coerced interrogation that did not conform to Defendant's own disciplinary procedures. The absence of any prior discipline, the thirteen-year clean record, and the absence of any written investigation findings provided to Plaintiff support the inference that the stated reason was pretextual.

26. As a direct and proximate result of Defendant's race discrimination, Plaintiff suffered loss of wages and employment benefits from May 20, 2025, loss of future earning capacity, damage to his professional reputation, and emotional distress, humiliation, and mental anguish.

6

**WHEREFORE**, Plaintiff Jason Hernandez respectfully requests that this Court enter judgment against Defendant Delta Air Lines, Inc. and award back pay and lost wages, front pay or reinstatement, compensatory damages for emotional distress, humiliation, and mental anguish, punitive damages, reasonable attorney's fees and costs pursuant to the applicable statutes, prejudgment interest, and such other and further relief as this Court deems just and proper. Plaintiff demands trial by jury on all issues so triable.

## COUNT II

### NATIONAL ORIGIN DISCRIMINATION IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, 42 U.S.C. § 2000e-2(a)

27. Plaintiff re-alleges paragraphs 1 through 6 (Jurisdiction, Venue, and Parties) and paragraphs 7 through 18 (Factual Allegations) as if fully set forth herein.

28. Title VII prohibits an employer from discriminating against an employee because of that

employee's national origin.

29. Plaintiff is of Dominican and Puerto Rican national origin. His national origin placed him in a protected class under Title VII.

30. Plaintiff was qualified for his position. He had performed his duties satisfactorily for nearly thirteen years without prior discipline.

31. The Cuba flight investigation that Defendant used to justify Plaintiff's suspension and forced termination targeted exclusively Latino employees, specifically those of Dominican, Puerto Rican, and other Hispanic national origins. To Plaintiff's knowledge, not one non-Latino employee who handled Cuba flights was investigated, suspended, or terminated in connection with the same alleged conduct.

7

32. Defendant subjected Plaintiff to adverse employment actions, including physical removal into an interrogation, coerced questioning under threat of immediate firing, indefinite suspension without written justification, confiscation of his airport credentials, and a forced resignation or-termination ultimatum, none of which were applied to similarly situated non-Latino employees handling the same flights.

33. The scope of the Cuba flight investigation, limited entirely to Latino employees, and the stated basis for the termination, which was presented without documentation or written findings after a coerced interrogation, support a plausible inference that Plaintiff's national origin was a motivating factor in the adverse actions taken against him.

34. As a direct and proximate result of Defendant's national origin discrimination, Plaintiff suffered loss of wages and benefits from May 20, 2025, loss of future earning capacity, damage to his professional reputation, and emotional distress, humiliation, and mental

anguish.

**WHEREFORE**, Plaintiff Jason Hernandez respectfully requests that this Court enter judgment against Defendant Delta Air Lines, Inc. and award back pay and lost wages, front pay or reinstatement, compensatory damages for emotional distress, humiliation, and mental anguish, punitive damages, reasonable attorney's fees and costs pursuant to the applicable statutes, prejudgment interest, and such other and further relief as this Court deems just and proper. Plaintiff demands trial by jury on all issues so triable.

## COUNT III

## AGE DISCRIMINATION IN VIOLATION OF THE AGE DISCRIMINATION IN EMPLOYMENT ACT OF 1967, 29 U.S.C. § 623(a)

8

35. Plaintiff re-alleges paragraphs 1 through 6 (Jurisdiction, Venue, and Parties) and paragraphs 7 through 18 (Factual Allegations) as if fully set forth herein.

36. The ADEA prohibits an employer from discharging or otherwise discriminating against an employee who is 40 years of age or older because of that employee's age. 29 U.S.C. § 623(a)(1).

37. Plaintiff is 52 years old and is a member of the class protected by the ADEA. 38. Plaintiff was qualified for his Customer Service Agent position. He held the position without disciplinary action for nearly thirteen years.

39. Of the employees terminated in connection with the Cuba flight investigation, the majority were over 50 years of age. Younger employees handling Cuba flights were not investigated or terminated. This concentration of adverse action among employees over 50, within a group

already limited to Latino employees, supports a plausible inference that age was a but-for cause of the adverse actions taken against Plaintiff.

40. The timing and manner of Defendant's action is also consistent with age-based discrimination. When Plaintiff was informed he would not be returning to work, Defendant suggested to him that he should find a less physically demanding job, a comment that reflects the assumption that an older worker's physical capabilities have declined and that his continued employment at his existing position is no longer expected or desired. This comment was not made in the context of any documented medical assessment of Plaintiff's actual capabilities.

41. The stated justification for the termination was not supported by documentation or written findings and was administered through a coerced interrogation inconsistent with Defendant's standard disciplinary procedures. The pretextual nature of the stated reason, combined with the concentration of the adverse action among employees over 50, supports the inference that age was the but-for cause of Plaintiff's termination.

9

42. As a direct and proximate result of Defendant's age discrimination, Plaintiff suffered loss of wages and benefits from May 20, 2025, loss of future earning capacity, damage to his professional reputation, and emotional distress, humiliation, and mental anguish. Because Defendant's violation was willful within the meaning of 29 U.S.C. § 626(b), Plaintiff is entitled to liquidated damages in an amount equal to his unpaid back pay.

**WHEREFORE**, Plaintiff Jason Hernandez respectfully requests that this Court enter judgment against Defendant Delta Air Lines, Inc. and award back pay and lost wages, front pay or reinstatement, liquidated damages in an equal amount to back pay pursuant to the ADEA,

reasonable attorney's fees and costs, prejudgment interest, and such other and further relief as this Court deems just and proper. Plaintiff demands trial by jury on all issues so triable.

## COUNT IV

## HOSTILE WORK ENVIRONMENT BASED ON RACE AND NATIONAL ORIGIN IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, 42 U.S.C. § 2000e 2(a)

43. Plaintiff re-alleges paragraphs 1 through 6 (Jurisdiction, Venue, and Parties) and paragraphs 7 through 18 (Factual Allegations) as if fully set forth herein.

44. Title VII prohibits an employer from maintaining a work environment so permeated with discriminatory hostility based on race or national origin that it alters the terms and conditions of employment.

45. Plaintiff, a Black man of Dominican and Puerto Rican descent, was subjected to a concentrated period of severe and humiliating conduct on May 20, 2025. A supervisor, Tony Chapman,

10

physically pushed Plaintiff into an office without his consent. Once inside, Defendant's corporate security and HR representatives accused Plaintiff of participating in a conspiracy he did not understand, questioned him about matters outside the scope of his job duties, and repeatedly threatened him with immediate termination if he did not cooperate. At the conclusion of this interrogation, Plaintiff was escorted through his workplace and out of the airport in a manner visible to coworkers, and his airport credentials were confiscated.

46. This conduct was not a routine disciplinary meeting. Plaintiff was physically pushed into the

room, threatened repeatedly during the questioning, accused of criminal conspiracy without documentation or explanation, denied any opportunity to review the allegations against him, and publicly escorted from his workplace. This sequence was directed at Plaintiff specifically and at other Latino employees over 50 who handled Cuba flights, while non-Latino employees working the same routes were not subjected to comparable treatment.

47. A reasonable employee in Plaintiff's position, physically forced into an interrogation room, threatened with firing during questioning, accused of conspiracy without basis, and then publicly removed from the workplace, would find the environment created by these events to be hostile and abusive. Plaintiff found it to be so, suffering acute emotional distress both during and following the May 20 events.

48. The targeting of exclusively Latino and Black employees for this treatment confirms that the conduct was connected to Plaintiff's race and national origin rather than to a genuinely race neutral investigation.

49. As a direct and proximate result of the hostile work environment, Plaintiff suffered emotional distress, humiliation, damage to his professional reputation among coworkers who witnessed his removal, and the loss of his thirteen-year career.

11

**WHEREFORE**, Plaintiff Jason Hernandez respectfully requests that this Court enter judgment against Defendant Delta Air Lines, Inc. and award back pay and lost wages, front pay or reinstatement, compensatory damages for emotional distress, humiliation, and mental anguish, punitive damages, reasonable attorney's fees and costs pursuant to the applicable statutes, prejudgment interest, and such other and further relief as this Court deems just and proper. Plaintiff demands trial by jury on all issues so triable.

## COUNT V

## RETALIATION IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, 42 U.S.C. § 2000e-3(a)

50. Plaintiff re-alleges paragraphs 1 through 6 (Jurisdiction, Venue, and Parties) and paragraphs 7 through 18 (Factual Allegations) as if fully set forth herein.

51. Section 704(a) of Title VII prohibits an employer from retaliating against an employee who has opposed any practice made unlawful by Title VII.

52. During the May 20, 2025 interrogation, Plaintiff opposed the discriminatory treatment he was experiencing by asserting his compliance with Defendant's own policies and by pushing back against accusations he found to be baseless and racially targeted. Plaintiff read Defendant's written policies aloud during the interrogation and explained specifically why his conduct had been consistent with each applicable standard, conduct that constitutes opposition to a discriminatory investigation.

53. Following this opposition, Defendant did not conclude the interrogation and release Plaintiff. Instead, Defendant suspended Plaintiff that same day, confiscated his credentials, removed him

12

from the airport, terminated his benefits, and two months later gave him the forced choice of resignation or termination. The adverse actions followed Plaintiff's opposition without any intervening development that would justify the escalation.

54. The decision to present Plaintiff with a resignation-or-termination ultimatum two months after a coerced interrogation, without written investigation findings, without any prior disciplinary

record, and without restoring Plaintiff to his position at any point during the investigation, constitutes a constructive discharge caused by the conditions Defendant deliberately imposed.

55. As a direct and proximate result of Defendant's retaliation, Plaintiff suffered constructive discharge, loss of wages and benefits from May 20, 2025, loss of future earning capacity, and emotional distress, humiliation, and mental anguish.

**WHEREFORE**, Plaintiff Jason Hernandez respectfully requests that this Court enter judgment against Defendant Delta Air Lines, Inc. and award back pay and lost wages, front pay or reinstatement, compensatory damages for emotional distress, humiliation, and mental anguish, punitive damages, reasonable attorney's fees and costs pursuant to the applicable statutes, prejudgment interest, and such other and further relief as this Court deems just and proper. Plaintiff  demands trial by jury on all issues so triable.

## COUNT VI

**RACE AND NATIONAL ORIGIN DISCRIMINATION IN VIOLATION OF THE FLORIDA CIVIL RIGHTS ACT OF 1992, SECTION 760.10(1)(a), FLORIDA STATUTES**

56. Plaintiff re-alleges paragraphs 1 through 6 (Jurisdiction, Venue, and Parties) and paragraphs 7 through 18 (Factual Allegations) as if fully set forth herein.

13

57. Section 760.10(1)(a), Florida Statutes, prohibits an employer from discriminating against an employee with respect to the terms, conditions, or privileges of employment because of that employee's race or national origin.

58. Plaintiff is a Black man of Dominican and Puerto Rican national origin. Both characteristics

constitute protected classes under the FCRA. Delta Air Lines, Inc. is an employer within the meaning of section 760.02(7), Florida Statutes.

59. Plaintiff was qualified for his position and had a nearly thirteen-year record of satisfactory performance. Defendant subjected him to materially adverse employment conditions based on his race and national origin, as described in paragraphs 9 through 17 above, including a physically coerced interrogation, suspension without written justification, confiscation of airport credentials, denial of benefits, and a forced resignation-or-termination ultimatum. These adverse actions were applied exclusively to Latino and Black employees handling Cuba flights. No non-Latino and no non-Black employee in the same role was subjected to the same investigation, suspension, or termination.

60. Any reason Defendant offers for these actions is pretextual. The investigation produced no written findings provided to Plaintiff, lasted two months, and resulted immediately in a termination ultimatum rather than any reinstatement or exoneration. No prior discipline existed. The pattern of targeting Latino and Black employees for the same treatment while non

Latino employees were not investigated supports the inference that race and national origin were motivating factors.

61. As a direct and proximate result of Defendant's violation of the FCRA, Plaintiff suffered loss of wages and benefits, loss of future earning capacity, damage to his professional reputation, and emotional distress, humiliation, and mental anguish.

14

**WHEREFORE**, Plaintiff Jason Hernandez respectfully requests that this Court enter judgment against Defendant Delta Air Lines, Inc. and award back pay and lost wages, front pay or

reinstatement, compensatory damages for emotional distress and mental anguish, punitive damages, reasonable attorney's fees and costs pursuant to section 760.11, Florida Statutes, prejudgment interest, and such other and further relief as this Court deems just and proper. Plaintiff demands trial by jury on all issues so triable.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all issues so triable.

Dated: <u>June 26, 2026</u> Respectfully submitted,

> */s/*Anthony M. Georges-Pierre
> Anthony M. Georges-Pierre, Esq.
> Fla. Bar No.: 0533637
> **REMER, GEORGES-PIERRE, &**
> **HOOGERWOERD, PLLC**
> 2745 Ponce de Leon Blvd
> Coral Gables, FL 33134
> Telephone: (305) 416-5000
> Email: agp@rgph.law

15